## ALUMINUM COLORS, Inc., v. UNITED STATES RESEARCH CORPORATION et al.

No. 6814.

District Court, E. D. New York.

June 29, 1934.

Cooper, Kerr & Dunham, of New York City (C. Blake Townsend, of New York City, of counsel), for plaintiff.

Clyde A. Norton, of New York City (M. Theodore Simmons, of New York City, of counsel), for defendants.

BYERS, District Judge.

The interlocutory decree in this case bears date of March 3, 1934, and is based on the decision (5 F. Supp. 961) that plaintiff's patent as to claims 5 and 10 is valid (they being the only claims in litigation) and had been infringed. Sixty days later, and after the time to appeal from that decree had been allowed to lapse, the defendants made three motions which were heard together,

(a) To open the record and add a patent.

(b) For rehearing.

(c) To dismiss the bill because the disclaimer filed by plaintiff prior to the trial was directed only to the claims in litigation.

For convenience these motions will be treated together.

(a) The patent sought to be added to the record is No. 1,869,042, issued to Bengston, July 26, 1932, about eleven months before the final hearing herein was brought to a close. It is not attached to the motion papers, but a copy was filed with defendants' brief, and as there is no question concerning the plaintiff's ownership of that patent, it has been read and considered as though physically embodied in the moving affidavit.

In the latter it is stated that although the defendants knew of this patent at the trial, they were not then prepared to accept its teachings as correct, but experiments since conducted by them, or one of them, have established "that the coating produced in the sulphuric acid electrolytes is basic aluminum sulfate (not aluminum oxide) and this patent of plaintiff now becomes important, as it reaches the same conclusion." That because the motion to reopen, made in connection

with the principal argument of the cause, was denied, and the motion papers pertaining thereto, by stipulation, were to be incorporated in the record, the same status should be accorded to this patent.

Stated otherwise, it is a motion to amend the motion to reopen, by adding something thereto which was known to the defendants at the trial.

The defect in the reasoning is more significant than in the practice.

It is not the Bengston patent which was in litigation, and manifestly it was neither in the art prior to Flick (filed July 10, 1923, issued February 10, 1925), nor did it anticipate the latter. Consequently, its only possible relevance is to fortify the defendants' contention that since the latter employ a sulphuric acid electrolyte, as does Bengston, who says, in describing the characteristics of the anodic film produced by his process: "I attribute this high adsorptive power in part to the large amount of fixedly contained $SO_3$, or basic aluminum sulfate, as the case may be. This basic sulfate is in a form resisting action by cold water and it is extremely active as an adsorbent. In the article of the present invention, the fixedly held $SO_3$ may range between, say 16 per cent. and 23–24 per cent. of the coating. Using weaker sulfuric acid than 1.5–1.7 specific gravity, it is not possible to fix as much $SO_3$, and the adsorptive properties are not as good"—it follows that the defendants' expert Handy must be right in his statements in the motion to reopen, that the defendants' process produces a coating which "is aluminum sulphate, a definite chemical compound," and therefore the motion to reopen was improperly denied.

Giving to this argument the greatest latitude of plausibility, it comes down to this, that because Bengston's coating is from 16 to 24 per cent. aluminum sulphate, Handy must be right, assuming that he does say that the defendants' coating is aluminum sulphate. And that this is so, although at the time of trial the defendants did not believe Bengston.

The major premise of the defendants will be seen to be that Bengston is right. Whether this is so or not cannot be decided in this case. If he is, his film is correctly described as to one-quarter of its constituency, and as to the remaining three-quarters he makes no assertion.

For present purposes it is assumed that Handy now says that the defendants' film "*is aluminum sulphate*" and Frary says that it is not. By each statement the court has assumed that the predominant constituent is that which determines the chemical identity of the substance, for ordinary or court-room purposes, and that each witness implies that other constituents are present, but not in sufficient volume to discredit the nomenclature employed. But the precision of the identity of the defendants' film is neither aided nor retarded by the appellation employed by another patentee in describing the result of his own process, as to 25% of the result.

For this reason, resort to the Bengston patent cannot fortify the validity of Handy's conclusion or opinion as proclaimed in the motion to reopen.

Before leaving this subject, it may be relevant to observe that the defendants' operations began many months after the issuance of the Bengston patent, and while no one who practiced the defendants' process testified at the trial, whereby cross-examination was avoided, it was argued in the defendants' briefs that the process of the latter was derived from the art prior to Flick. This subject is alluded to because it is thought to suggest a possible reason why resort was not had by defendants to the Bengston patent when the case was on trial. The attempt now to add it to the record under the guise of fortifying the conclusions offered by the witness Handy cannot be sanctioned for the reason that it would not seem to accomplish that purpose.

Motion denied.

■ (b) The motion for rehearing. This is largely an application for reconsideration of the motion to reopen. The matters relied upon are the statements in the two Handy affidavits presented when the cause was argued. The defendants urge that the court overlooked, or misapprehended, or failed to grasp, the import of the representations embodied in those affidavits. Nothing was overlooked, but it may be that there was a failure to understand. If so, the infirmity persists.

The motion to reopen was denied, as stated in the opinion, because the defendants offered no clear or convincing affirmative showing as to the chemical constituency of its film or coating. The opinion was already sufficiently long to render discussion of this subject superfluous, but perhaps a statement of what was then and is now thought should be made.

The witness Handy deposed under date of October 4, 1933, that he had done various things with respect to coatings made under the teachings of the Flick patent "and of the

Norden Article, as representative of the sulphuric acid coatings."

The court was not called upon to make a decision concerning coatings made under the Norden Article; it was concerned with the coatings made by the defendants. What their process is has never been disclosed at any time, and elaborate protests were made concerning their right to guard trade secrets and formulae, on more than one occasion during the trial. No effort was made to correlate the defendants' electrolyte to the Norden article, and consequently results based upon the latter would not necessarily sustain opinions concerning the constituency of the defendants' coatings. For this reason all of Mr. Handy's statements concerning the defendants' coatings are thought to be based on opinion rather than demonstration. Mr. Handy's affidavit concludes with a statement headed "Results of Analyses." It says "The sulphuric acid electrolytes produce a coating of basic sulphate of aluminum, completely insoluble in water." That is an abstract statement, the logic being that since the defendants' coating is created by the use of a sulphuric acid electrolyte, the coating itself is a basic sulphate of aluminum.

To that was opposed Dr. Frary's statement that his test of *the defendants' coating* convinced him that it is substantially aluminum oxide.

A choice had to be made between these two averments, and the concrete statement was more convincing to the court than the logical abstraction.

The conclusion was somewhat aided by the complete reversal in testimony by the defendants' experts. They were quite sure on the trial that the defendants' coating was aluminum hydroxide. After the trial one of them was quite sure that it *must be* aluminum sulphate.

After weighing all matters comprehended in the entire record the court deliberately concluded that the witness Frary had demonstrated his thesis more convincingly than the witness Handy. If that conclusion was erroneous, correction lies in appeal, not reargument.

The motion for rehearing is denied.

 (c) The motion to dismiss the bill because of the nature of the disclaimer.

This motion does not fall within any authority cited by the defendants. The disclaimer was filed before trial by over three weeks, and restricted in terms the process and the article, so as to embrace a film or coating formed by electrolytic action only. There had been no adjudication, preliminary or final, at the time, and it applied to the two claims in suit, namely, 5 and 10.

The defendant thinks it should have also embraced claim 9, which describes an uncolored coating, while 10 describes one which has been dyed.

Ensten v. Simon, Ascher & Co., 282 U. S. 445, 51 S. Ct. 207, 75 L. Ed. 453, is relied upon. In that case there had been an adjudication of invalidity from which no appeal had been taken, and the disclaimer was not filed until nearly two years had elapsed. That decision can have no bearing upon this case.

The defendant argues that the disclaimer was a voluntary admission that claims 5 and 10 were invalid as allowed, and that, as 9 cannot be distinguished from 10 for present purposes, the failure to include the latter in the disclaimer must bring down upon the plaintiff the penalties discussed and applied in the foregoing case.

Perhaps a word concerning the Flick patent should be interjected. It describes only an electrolytic process. No reference is made to a coating created as the result of a purely chemical reaction. Whether the disclaimer is to be deemed more than the narrowing of issues for trial is argumentative.

The plaintiff has the right to rely upon the presumption of validity as to claim 9 which resides in the grant of its patent until there is a determination, finding or adjudication, to the contrary. When that time comes the necessity for disclaimer will be encountered as to that claim.

The disclaimer as filed falls within the language of the Circuit Court of Appeals for the Second Circuit in United Chromium v. International Silver, 60 F.(2d) 913 at pages 914 and 915, certiorari denied 288 U. S. 600, 53 S. Ct. 319, 77 L. Ed. 976.

The disposition of this motion is intended to indicate nothing more than that the necessity for disclaimer as to claim 9 cannot be adequately determined in this guise.

The alleged fraudulent or oppressive conduct attributed to the plaintiff has not been demonstrated with any approach to legal sufficiency.

Motion denied.

Settle on notice separate orders denying each motion.